ALEX KRAFT, APPELLANT, v. EDNA M. WERT, APPELLEE.

35 N. W. 2d 786

Filed January 28, 1949.   No. 32504.

*Miles W. Johnston,* for appellant.

*Davis, Stubbs & Healey,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Alex Kraft brought this action in the district court for Lancaster County against Edna M. Wert. The purpose of the action is to recover for injuries to plaintiff's person and for damages to his property caused by an accident that happened on July 10, 1946, which accident he claims was due to defendant's negligence. The defendant filed a cross-petition wherein she claims damages to her property by reason of the same accident, which she alleged was caused by plaintiff's negligence. The jury returned its verdict for the defendant on plaintiff's petition and for the plaintiff on defendant's cross-petition. Plaintiff filed a motion for new trial and from the overruling thereof he appeals.

Appellant's first two assignments of error relate themselves to the sufficiency of the evidence to support the verdict of the jury as it relates to the appellant's cause of action.

The evidence establishes, without dispute, that the accident happened on July 10, 1946, between the hours of 5:45 and 6:00 p. m. at an intersection of two county roads located at a point about four miles north of Lincoln. It was occasioned when the car of appellee, a 1936 Plymouth sedan and being driven by her, ran into the right rear of the appellant's truck, a Model A Ford with a fuel tank, which was being driven by him. The tank, at the time of the accident, contained 300 gallons of gasoline and 150 gallons of distillate fuel. The collision occurred in the northeast quarter of the intersection.

Neither road was an arterial or through highway,

consequently there were no stop signs at the intersection. The east-west road was graveled and had a traveling surface approximately 22 feet wide. The north-south road had a dirt surface and had about the same width of traveling surface. Both roads were dry and the weather was normal with a clear sky. Appellee was, at the time, traveling from the east toward the west while the appellant was traveling from the south toward the north. The intersection was a dangerous corner because of a high embankment located at the southeast corner thereof. Both drivers were fully familiar with that fact.

After the collision the truck turned over. It traveled a distance of about 93 feet north before coming to a stop. When it came to a stop it was on the traveled portion of the north-south road, on its wheels, and facing east. The car stopped just north of the northwest quarter of the intersection, upright, and facing toward the north.

Without setting out any of the detailed facts with reference thereto we think there is evidence from which the jury could have found that the appellee was driving at an excessive rate of speed, considering the nature of this corner; that while so doing she failed to maintain a proper lookout to her left for approaching cars; and that such conduct on her part was a proximate cause of the accident.

What has been said of appellee is likewise true of the appellant's conduct in driving his truck, for there is evidence from which the jury could have found: That appellant drove his truck into and across this intersection at a speed of somewhere between 35 and 45 miles an hour; that the truck, after being hit, turned over and finally stopped about 93 feet north of where it was hit; that it was standing upright when it stopped and facing east; that appellant last looked to his right, or toward the east, at a point somewhere between $37\frac{1}{2}$ to 40 feet south of the center of the intersection; that he thereafter never again looked in that direction; that when he looked

to the east he had a vision of between 200 and 300 feet but saw no car approaching; and that appellee's car must have at that time been within the range of his vision.

We think the last statement is justified for the following reasons: Appellant admits he approached, entered, and crossed the intersection while traveling at a speed of somewhere between 15 and 20 miles per hour; that after he looked to his right the evidence shows he traveled slightly over 50 feet before being hit; that in order for appellee's car to travel the distance of appellant's vision toward the east, that is, between 200 and 300 feet, and the point of the collision appellee's car would have had to travel somewhere between 75 and 100 miles per hour; and that there is no oral evidence in the record or facts and circumstances that would sustain any such finding of speed. In fact, it is apparent that appellant simply did not see appellee's car although it must have been in plain sight.

We said in Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673: " 'The duty of the driver of a vehicle * * * to look for vehicles approaching on the highway implies the duty to see what was in plain sight.' Vandervert v. Robey, 118 Neb. 395, 225 N. W. 36, citing Kemmish v. McCoid, 193 Ia. 958, 185 N. W. 628."

It seems so self-apparent to us, from a review of the evidence, that both drivers were traveling at an excessive rate of speed, considering the nature of the corner, without keeping a proper lookout or, if they did, in failing to see what was in plain sight that it would be difficult to understand how the jury could have come to a different conclusion than it did. The record certainly presented a question of fact for the jury as to whether appellee was guilty of negligence and appellant of contributory negligence insofar as those issues related themselves to the right of appellant to recover on his cause of action.

Appellee contends that under our holdings she was

entitled to a directed verdict. We do not think this contention to be correct. It is true that appellant admitted that he looked to his right, or east, when between 37½ and 40 feet south of the center of the intersection; that he did not again look to his right before the collision occurred; and that he had vision to his right of from 200 to 300 feet but did not see the appellee's car although, as we have already pointed out, it must have been traveling within the range of his vision.

We stated in Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, that: "If the driver of an automobile entering an intersection looks for approaching vehicles but fails to see one which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law."

However, section 39-728, R. S. 1943, provides in part: "In all other cases the vehicle reaching the intersection first shall have the right of way." Here there is evidence from which the jury could have determined that appellant reached the intersection first in such a manner that he, in fact, had the right of way. Under this situation we think the following from Whitaker v. Keogh, *supra,* applies: "The proper rule is that when a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see an automobile not shown to be in a favorable position, the presumption is that its driver will respect his right of way and the question of his contributory negligence in proceeding to cross the intersection is a jury question."

We think the question of appellant's negligence, if any, and the effect thereof was properly for the jury.

Appellant further complains of two instructions given by the court with reference to section 39-728, R. S. 1943.

This statute provides: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. In all other cases the vehicle reaching the intersection first shall have the right of way."

The court gave the following instruction with reference thereto: "You are instructed that the right of way which is given to one under the statute is not an absolute *right of way* which may be exercised under all conditions, but if to the one to whom the right of way is granted, in the exercise of ordinary care, it appears that to insist upon the right of way would probably result in a collision, it would be the duty of such person to use ordinary care to avoid a collision even to the extent of yielding his right of way, and his failure to do so, under those circumstances, would be evidence of negligence." (Emphasis ours.)

Appellant offered the identical instruction given except that his requested instruction contained the word "right" in place of the words "right of way" which we have italicized in the instruction given.

While there is a difference in meaning between the words "right" and "right of way" in that the former is much more extensive in its application and would be inclusive of "right of way," we think that as here used they would have a similar meaning and any distinction would be without a difference. We think the instruction given is more specific, as to the question here involved, and therefore preferable to the one requested.

Appellant, in his requested instruction No. 2, set out section 39-728, R. S. 1943, and claims that the court erred when it gave the following instruction with reference thereto: "* * * and that when two vehicles *approach or enter* an intersection at approximately the same time, the driver of the vehicle on the left shall

yield the right of way to the vehicle on the right, but that the driver of any vehicle travelling at an unlawful speed shall forfeit any right of way which he might otherwise have under the provisions of the law." (Emphasis ours.)

Appellant contends that the court, in attempting to interpret the statute for the jury by its instruction No. 7, used the words "approach or enter," which we have italicized in the instruction, in place of "reach" as used in the statute and in so doing committed error for the reason that the words so used do not have the same meaning as "reach." We cannot agree with this contention, even though it could be said that this language was intended to be an interpretation, for we think the statement "that when two vehicles approach or enter an intersection at approximately the same time" correctly interprets and means the same as "when said vehicles shall reach the intersection at approximately the same time," as contained in the statute.

However, the language used is the same as contained in section 39-751, R. S. 1943, which, as far as here material, is as follows: "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right * * *. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

Appellant also contends that the court erred in its interpretation of section 39-742, R. S. 1943, by the giving of instruction No. 13.

This statute provides, as far as here material, as follows: "It shall be unlawful for more than three persons over the age of twelve years to occupy the front or driver's seat of any motor vehicle while such vehicle is in motion on the highway. 'Occupied,' as used herein, shall include the holding of one person upon the lap of another."

The court gave the following instruction: "The jury is instructed that the Statutes of the State of Nebraska provide with reference to the number of persons who may occupy a front seat of a vehicle that it shall be unlawful for more than three (3) persons over the age of 12 years to occupy the front, or driver's seat. In this connection you are instructed that it is not a violation of the Statute if three persons over 12 years of age and one or more persons under 12 years of age should occupy such a seat of a vehicle."

The evidence shows that in addition to appellee the front seat of her car was occupied by Mr. and Mrs. Kenneth Stewart. The Stewarts were holding a child of about two years of age on their laps.

The court submitted the following issue as to appellee's negligence: "* * * that she was operating said automobile at said time and place with two adult persons and one minor in addition to herself in the front seat of her automobile so crowding her that she could not safely operate said automobile with due regard to the safety of others."

We think this instruction correctly interprets the statute and properly advised the jury and could have in no manner misled them or in any manner prejudiced appellant's rights as to this issue.

Appellant complains of the fact that appellee, and the witness Kenneth Stewart, were permitted to testify as to their opinion of the speed that appellant's truck was traveling just before the accident. These two witnesses were in the front seat of appellee's car and saw appellant's truck approach from the left. They admitted seeing it travel but a short distance before the collision, however both witnesses saw what happened to it and where it went after the accident. Both witnesses had had driving experience and the qualifications upon which they based their opinions had been shown.

The situation here is comparable to that in Koutsky v. Grabowski, *ante* p. 508, 34 N. W. 2d 893, except that

here the truck was coming at right angles from the left while in the foregoing case the car was coming from the rear. Therein we said:

"Speed of an automobile is not a matter of exclusive knowledge or skill, but anyone with a knowledge of time and distance is a competent witness to give an estimate. The opportunity and extent of his observation goes to the weight of the testimony.

"A witness who has shown himself qualified to give an opinion as to the speed of a moving automobile may express an opinion as to the speed a car is moving, although the same be coming directly toward him, such fact not affecting the competency of his testimony but rather the weight to be given the same."

We think the same principle is applicable here and the evidence was properly received.

From an examination of all the matters complained of we find nothing in the record that requires a reversal and the verdict and judgment of the trial court should be affirmed. It is so ordered.

AFFIRMED.

PAINE, J., not participating.