Joseph W. McKENNA, Appellant,

v.

John W. BLACKBURN, Appellee.

No. 17791.

United States Court of Appeals
Eighth Circuit.

July 21, 1965.

John J. Powers, of White, Lipp, Simon & Powers, Omaha, Neb., made argument for appellant and filed brief with Theodore Kowalski, of White, Lipp, Simon & Powers, Omaha, Neb.

Thomas J. Walsh, of Haney, Walsh & Wall, Omaha, Neb., made argument for appellee and filed brief.

Before VOGEL and MEHAFFY, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

This personal injury action arose out of an intersection accident occurring in the City of Omaha, Nebraska, at about 9:40 P.M. on May 18, 1962. A jury trial resulted in a verdict for the defendant-appellee. Following denial of appellant's motion for new trial, this appeal was perfected.

Jurisdiction exists by reason of diversity of citizenship and the requisite amount in controversy. The parties agree that the substantive law of the State of Nebraska fixes their rights and liabilities.

The sole issue presented by this appeal involves the propriety of giving the following instruction to the jury:

"Item No. 12. The right of way which is given to one under the statute is not an absolute right which may be exercised under all conditions, but if to the one to whom the right of way is granted, in the exercise of ordinary care it appears that to insist upon the right of way would probably result in a collision, it would be the duty of such person to use ordinary care to avoid a collision even to the extent of yielding his right of way, and his failure to do so, under those conditions, would be evidence of negligence on his part."

The basic facts are not in dispute. Both parties were alone in their automobiles and were the only eyewitnesses to the accident. Appellant was traveling in his Chevrolet sedan north on 62nd Street; appellee was proceeding east in his Ford sedan on Chicago Street. The speed of both automobiles was well within the speed limit. Appellant testified that as he approached and entered the intersection he was traveling about 15 to 20 miles per hour; appellee testified that shortly before entering the intersection he reduced his speed from about 20 miles per hour to between 10 and 15 miles per hour. Chicago Street is approximately 18 feet wide, being surfaced with asphalt; 62nd Street is approximately the same width, and constructed of concrete. The weather was clear and dry, although there was some evidence that there may have been some fog. The road surface was dry. Both vehicles were being operated with their headlights on. Appellant testified that as he approached the intersection, at a point about 20 feet from the intersection, he looked to the left and saw nothing, then looked to the right and saw nothing, and then " * * * looked casually to the left and * * * saw this flash of light and that was it". He further testified that " * * * as I looked I saw this flash of light and almost instantly I was hit". Appellee testified that as he approached the intersection he looked to the right and " * * * didn't see anyone coming", then "slowed to the intersection" and, when he (appellee) was about a car length west of the intersection he first saw appellant's automobile which, at that instant, was approximately one car length south of the intersection. Appellee testified that he attempted to apply his brakes and swerve in an effort to avoid collision; however, his efforts were unsuccessful, and the cars collided in about the middle of the intersection. The right front section of the Ford automobile and the left front portion of the Chevrolet automobile were extensively damaged and appellant suffered personal injuries. The intersection was uncontrolled.

Appellant was familiar with the general characteristics of the intersection involved. Between 1955 and the date of the accident he had traveled 62nd Street, across Chicago Street " * * * as much as two or three or four times a week". He was " * * * familiar with the fact that there were shrubs and trees and material of that nature over on what would be the southwest corner of the intersection" and was also " * * familiar with the fact that the view to the west of a driver proceeding north on that street is not too good until you

get up close to the intersection". Exhibits 1 and 7 clearly depict trees and shrubbery situated on the southwest corner of the intersection, which would obviously interfere with and obstruct the view of a driver proceeding north on 62nd Street and approaching its intersection with Chicago Street. Appellee testified that he had never previously entered the intersection involved, from Chicago Street, prior to the evening of the accident.

Nebraska law provides that vehicles approaching an uncontrolled intersection have the right of way over those approaching from the left when the vehicles reach the intersection at approximately the same time. Section 39–728, Nebraska R.R.S.1943. The jury was instructed in the words of the statute. Thus, in this case, appellant was, under the statute, the favored driver.

Appellant asserts that, by reason of his favored position, he should prevail as a matter of law. Appellant concedes that the challenged instruction is a correct statement of the law of Nebraska, in the abstract, but argues that inasmuch as there is no evidence that he saw appellee's vehicle until immediately prior to impact such instruction is inapplicable and prejudicial. Therefore, the narrow issue is whether or not the applicability of the rule of law contained in instruction 12 is limited to those instances where the evidence discloses that the favored driver saw the vehicle approaching from the left and, if so, whether the giving of such instruction in this case constitutes reversible error.

In Thrapp v. Meyers, 114 Neb. 689, 209 N.W. 238, at page 240, 47 A.L.R. 585, the Supreme Court of Nebraska stated:

"The following rules of the road at . highway intersections seem well established: (1) The driver must look and listen for the approach of other vehicles, at such point as they may be seen or heard. (2) He must have his car under such reasonable control as to avoid accidents which might have been foreseen by the exercise of ordinary care. (3) He has the right of way over traffic approaching on his left, but is not thereby relieved from the duty of exercising ordinary care to avoid accidents; * * *."

In Evans v. Messick, et al., 158 Neb. 485, 63 N.W.2d 491, 496, it is stated:

"It is true that the plaintiff's car, being on the right of the defendant's car, was in the favored position and had the right-of-way, other things being equal, but that did not do away with the duty of its driver to exercise ordinary care to avoid an accident."

and, further,

"The law provides that when a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger."

Also see: Nelson v. Plautz et al., 130 Neb. 641, 265 N.W. 885, and Griess v. Borchers, 161 Neb. 217, 72 N.W.2d 820.

In a discussion concerning the law applicable to drivers approaching an intersection at approximately the same time, the Supreme Court of Nebraska, in Kohl v. Unkel, 163 Neb. 257, 79 N.W.2d 405, at page 412, stated:

"Looking at a point where one cannot see, or failure to timely look at a point where he can see such approaching vehicles, is not a compliance with this rule, * * *."

and in Kraft v. Wert, 150 Neb. 719, 35 N.W.2d 786, at page 788, the same Court said:

"We said in Bergendahl v. Rabeler, 133 Neb. 699, 276 N.W. 673, 675: 'The duty of the driver of a vehicle * * * to look for vehicles approaching on the highway implies the duty to see what was in plain sight.'"

The law of Nebraska, as above set forth, has been stated, reaffirmed and adhered to by the Supreme Court of that state for many years. See also: Ripp v. Riesland et al., 170 Neb. 631, 104 N.W.

2d 246; Bell v. Crook, 168 Neb. 685, 97 N.W.2d 352, 74 A.L.R.2d 223; Bezdek v. Patrick, 167 Neb. 754, 94 N.W.2d 482; and Nichols v. McArdle, 170 Neb. 382, 102 N.W.2d 848.

In Ripp, supra, the issues were which of the parties had the right-of-way at the intersection where the collision occurred, and which of the parties was guilty of negligence which proximately caused or contributed to cause the accident. The evidence disclosed, inter alia, that the appellant had knowledge of all the conditions and hazards existing at the intersection and surrounding area; that he failed to decrease his speed; that the accident occurred in about the center of the intersection; that each of the vehicles involved had approached the intersection at about the same speed and distance from the intersection; and *that appellant did not see the other vehicle until an instant before the collision,* although there was opportunity for observation prior to entering the intersection. The court, after commenting upon this evidence, said: (page 256, 104 N.W.2d)

"The proof of negligence of appellant was such that reasonable minds could differ as to the correct inferences or conclusions to be deduced therefrom."

An examination of the foregoing cases conclusively establishes that, in Nebraska, the statutory right-of-way is not absolute, and that a driver possessing such right-of-way is not relieved of the duty of exercising ordinary care to avoid accidents; further, that in order to comply with the rule requiring the exercise of ordinary care by the driver having a statutory right-of-way, such driver is obligated to look for approaching vehicles at a point from where they can be seen, and to see those vehicles within that radius which denotes the limit of danger.

In view of the pleadings and the evidence in this case, there was a jury issue as to whether appellant did, at the critical time, exercise ordinary care to avoid the accident and was in compliance with the requirements of the established rule in Nebraska. The credibility of the witnesses (including appellant) and the weight to be given to their testimony was, of course, within the sound discretion of the jury. It is again noted that the only eyewitnesses to the accident were the parties themselves, and that included in the evidence were enlarged photographs of the intersection clearly depicting the area as it appeared to the approaching drivers.

In determining the rights and duties of the respective drivers, and whether or not appellant was in compliance with the rule requiring the exercise of ordinary care on the part of the directionally favored driver to avoid an accident, the jury may have considered the following:

1. Whether appellant did in fact look for vehicles approaching the intersection from the left, at a point from where they could be seen;

2. Whether, if he looked, appellant did in fact see appellee's vehicle;

3. Whether, at the time and place from which appellant looked, appellee's vehicle was within that radius which denoted the limit of danger, and

4. Whether, under all the circumstances present, appellant exercised ordinary care to avoid the accident.

In the unpublished memorandum filed in connection with his denial of appellant's motion for new trial, the trial court, in commenting upon the rule of law contained in instruction 12, stated:

"It is true that the rule is applicable when the driver testifies that he saw a vehicle approaching the intersection prior to entering the intersection or the moment of impact. Evans v. Messick, 158 Neb. 485, 63 N.W.2d 491. However, it is also true that the Nebraska court has not limited its application to such situation alone."

Thereafter follows citation and discussion of Meyer v. Hartford Bros. Gravel Co. et al., 144 Neb. 808, 14 N.W.2d 660.

It was, of course, the duty of the trial judge to fully instruct the jury as to all applicable law, and in order that the jury be fully instructed as to the rights and duties of the respective drivers, it is our opinion that the giving of the challenged instruction was not only proper but essential. The evidence, as disclosed by the record before us, amply supports its applicability.

Affirmed.